# Exhibit A

EFiled: Sep 28 2022 11:45AM EDT
Transaction ID 68179719
Case No. N22C-09-693 JRJ

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| WILLIAM RAMSEY )<br>)<br>   Plaintiff, )<br>)<br>)<br>v. )<br>)<br>THE STANDARD )<br>INSURANCE COMPANY )<br>)<br>   Defendant. )<br>)<br>)<br>) | C.A. No.<br><br>TRIAL BY JURY DEMANDED |

## COMPLAINT

Plaintiff William Ramsey, as and for his complaint for declaratory and other relief against defendant The Standard Insurance Company, alleges as follows:

### Nature of the Action

1. This action seeks recovery of compensatory and punitive damages, from defendant The Standard Insurance Company's breach of contract, bad faith breach of contract, and otherwise wrongful refusal to honor its contractual obligations under two disability income policies insuring the plaintiff William Ramsey.

2. This action seeks, among other relief, a declaration that the defendant The Standard Insurance Company ("Standard") must pay Business Overhead Expense benefits to the plaintiff William Ramsey for business expenses incurred

00276638.1

by Mr. Ramsey beginning on June 10, 2014, and stemming from Ramsey's cancer diagnoses.

### The Parties

3. Plaintiff William Ramsey is a natural person residing at 10411 New Ascot Drive, Great Falls, Virginia, 22066. He also has a residence in Bethany Beach, Delaware.

4. Ramsey was the Chief Executive Officer and Chief Investment Officer of Ramsey Asset Management, LLC, an investment advisory services firm incorporated in Delaware.

5. Defendant Standard is an Oregon corporation with an address at 1100 SW Sixth Avenue, Portland, Oregon, 97204. Standard is licensed to conduct business in Delaware and has authorized more than five hundred insurance agents to conduct business in Delaware on its behalf. Standard has also filed multiple lawsuits in Delaware.

### The Insurance Contract

6. On July 3, 1989, Mr. Ramsey submitted to Minnesota Mutual Life Insurance Company an application for two insurance policies. The policies were designed to provide disability coverage for business overhead expenses.

7. One policy, No.00H1825731, was purchased on September 29, 1989.

8. The second policy, No.00H1834539, was purchased on October 29, 1989.

9. The monthly benefit under policy No. 00H1825731 is $66,449.00 per month, with a maximum benefit period of fifteen months. The maximum benefit under this policy is $996,735.00.

10. The monthly benefit under policy No. 00H1834539 is $25,556.80 per month, with a maximum benefit period of fifteen months. The maximum benefit under this policy is $383,352.00.

11. Both policies expressly list Mr. Ramsey as the insured.

12. At some point in time, Minnesota Mutual Life sold all relevant insurance policies to Standard.

13. The premiums for these policies were billed and paid quarterly.

### Mr. Ramsey's cancer diagnosis

14. On June 10, 2014, Mr. Ramsey was diagnosed with renal cell carcinoma.

15. Mr. Ramsey sought medical treatment for his condition from Dr. Mark Vasiliadis in Reston, Virginia, and Dr. Mo Allaf, in Baltimore, Maryland.

16. The cancer caused Mr. Ramsey to endure severe urological issues and fatigue.

17. Further, renal cell carcinoma has a high mortality rate. This fact caused Mr. Ramsey tremendous anxiety about his future.

18. These symptoms caused Mr. Ramsey to have significant difficulties in concentrating and focusing.

19. The combined effect of the urological issues, fatigue, anxiety, and strain on his concentration and focus rendered Mr. Ramsey unable to perform the duties of his job.

20. Mr. Ramsey's drop in job performance was evidenced by the departure of clientele from Ramsey Asset Management.

21. Ramsey Asset Management's gross earnings fell precipitously following his diagnosis.

22. In 2018, Mr. Ramsey was diagnosed with prostate cancer.

23. Ramsey's illness and disabilities lasted over four years.

24. As a result of Mr. Ramsey's medical issues, Ramsey Asset Management winded down its operations starting in 2018.

25. Ramsey Asset Management ceased operations on December 31, 2019.

## The Filing of the Claim

26. Mr. Ramsey provided a notice of insurance claim to Standard on October 17, 2018, stating that he had been unable to fully perform his work duties as of the date of his cancer diagnosis: June 10, 2014.

27. Mr. Ramsey stated in his claim that the cancer illnesses prevented him from providing the necessary focus on the complex analysis and decision making needed to manage his clients' investment portfolios.

28. On October 27, 2018, Standard acknowledged Mr. Ramsey's claim.

29. On June 3, 2019, Standard requested information on why notice of claim was not provided within the time period specified in the policy.

30. On June 21, 2019, Standard interviewed Mr. Ramsey, and formally requested financial information, including Ramsey Asset Management's business tax returns, schedules and attachments for multiple years, and monthly profit and loss statements.

31. Mr. Ramsey was fully compliant, providing financial records for Ramsey Asset Management, including tax returns from 2012 to 2017, profit and loss statements from 2012 to 2018, and the company's general ledgers for 2012 to 2018, in addition to the entirety of his medical records from his attending physicians.

32. On October 4, 2019, Standard formally denied Mr. Ramsey's claim.

33. On April 7, 2020, Mr. Ramsey appealed Standard's denial of his claim.

34. On May 20, 2020, Standard's Administrative Review Unit upheld the denial of Mr. Ramsey's claim.

### Standard's Wrongful Conduct

35. Standard has denied coverage for all claims pursued by Mr. Ramsey.

36. Standard has taken a position that Mr. Ramsey did not file a claim within the 30-day notice provided by the policy.

37. The policy states that a claim must be made within 30 days after the onset of any loss covered by this policy.

38. Mr. Ramsey has made clear that he was unaware of the policy. Ramsey Asset Management handled payment of premiums for the policies through the billing department and Mr. Ramsey had no contact with the policies after their purchase.

39. Further, the symptoms of his illness kept him from being able to focus on financial issues, including the determination of what insurance assets may have been available to him or his company.

40. Under these circumstances, it would have been impracticable if not impossible for Mr. Ramsey to provide notice before he did.

41. Further, it is settled in Delaware that before coverage is forfeited due to failure to notify, the insurer must establish prejudice. *See* Hercules Inc. v. AIG Aviation, Inc., 776 A.2d 550, 567 (Del. Super. Ct.), aff'd, 760 A.2d 162 (Del. 2000); *See also,* State Farm Mut. Auto. Ins. Co. v. Johnson, 320 A.2d 345, 346 (Del. 1974).

42. Standard has provided no legitimate example of prejudice that it has faced due to the timing of Mr. Ramsey's claim.

43. Furthermore, Standard's justification for denial of Mr. Ramsey's claim is riddled with inaccuracies and illogical conclusions.

44. Rather arbitrarily and without reason, Standard chose to consider Mr. Ramsey's claim as of March 22, 2018, rather than his date of cancer diagnosis on June 10, 2014.

45. Standard asserts that there was no basis to support that Mr. Ramsey's sickness kept him from working as of June 10, 2014, despite the impairments described in paragraphs 16 through 23.

46. Standard did not find merit in the rigors of Mr. Ramsey's joint role as Chief Executive Officer and Chief Investment Officer of Ramsey Asset Management.

47. Standard relied on the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") to assess Ramsey's ability to perform his regular occupation.

48. However, there is no DOT description for a Chief Executive Officer or Chief Investment Officer, nor for Mr. Ramsey's unique dual role for Ramsey Asset Management.

49. Asset management is a very competitive business to both obtain and keep clients, involving the ability to travel, meet with executives, meet potential clients, and to discuss various portfolios of stocks, bonds, and other entities. Each of these roles requires a high degree of stamina, attention to detail, and concentration, in addition to being a fiduciary duty, and facing heightened legal liability.

50. Thusly, Ramsey is due $1,380,087.00, the combined amount of the maximum benefits due under both policies.

## COUNT I

### Declaratory Judgment

51. Plaintiff William Ramsey repeats and incorporates by reference the allegations set forth in paragraphs 1 through 50 above.

52. An actual controversy of a justiciable nature exists between Mr. Ramsey and Standard concerning Standard's obligation to pay overhead business

expense benefits under the company's policies. The controversy is of sufficient immediacy to justify the entry of a declaratory judgment.

53. An award of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

## COUNT II

### Breach of Contract

54. Plaintiff William Ramsey repeats and incorporates by reference the allegations set forth in paragraphs 1 through 53 above.

55. Standard has breached the terms of the company's policies. Standard's breaches include, without limitation, its refusal to pay overhead business expense benefits to Mr. Ramsey for the duration of his sickness while running his business.

56. As a direct result of Standard's breaches of contract, Mr. Ramsey has been deprived of the benefit of insurance coverage for which substantial premiums were paid. As a further result of Standard's breaches of contract, Mr. Ramsey has suffered economic injury.

57. Defendant Standard unlawfully and unreasonably failed and refused to pay the tender despite Mr. Ramsey's compliance with all material conditions precedent to receipt of benefits under the policies.

## COUNT III

### Bad Faith Breach of Contract

58. Plaintiff William Ramsey repeats and incorporates by reference the allegations set forth in paragraphs 1 through 57 above.

59. Defendant Standard's failure and refusal to tender the amounts due under the policies as necessary was without reasonable justification.

WHEREFORE, plaintiff William Ramsey respectfully requests that this Court enter judgment in his favor and against defendant Standard as follows:

    a. Awarding Ramsey compensatory damages for Standard's breaches of contract;

    b. Awarding Ramsey compensatory and punitive damages for Standard's bad faith breaches of contract;

    c. Awarding Ramsey his attorneys' fees for this action;

    d. Awarding Ramsey all costs of this action;

    e. Awarding Ramsey pre- and post-judgment interest; and,

    f. Awarding such other and further relief as this Court deems just and proper.

MURPHY & LANDON

*/s/ Roger D. Landon*
ROGER D. LANDON, No. 2460
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8112
Attorney for Plaintiff