**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM RAMSEY<br><br>Plaintiff,<br><br>v.<br><br>THE STANDARD INSURANCE COMPANY<br><br>Defendant. | ) | C.A. No.: 1:22-cv-01555-MAK |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

MURPHY & LANDON
ROGER D. LANDON, No. 2460
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8112
Attorney for Plaintiff

January 26, 2023

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... i

I. Introduction ..... 1

II. Background and Procedural Facts ..... 1

III. Plaintiff has standing to assert this claim against Defendant ..... 2

A. Plaintiff has standing, individually or by virtue of owning RAM ..... 2

B. Defendant has waived the right to assert lack of standing ..... 4

C. If the Court has questions as to whether Plaintiff has standing, then Plaintiff should be afforded an opportunity to conduct discovery to establish standing ..... 5

IV. Discovery is necessary to properly determine choice of law. However, the current record (i.e. the allegations in the complaint) supports that Delaware law should govern this dispute ..... 6

A. Plaintiff should be permitted to conduct discovery so that the Court has a proper and complete factual predicate to determine choice of law ..... 6

B. The facts in the record show evidence that Delaware law should govern this dispute ..... 7

i. There is a false-conflict between Virginia and Delaware, and thus, the forum state law should apply ..... 7

ii. Alternatively, Delaware has the most significant relationship to the case ..... 9

V. Defendant's arguments over conditions precedent and statute of limitations are premature without necessary discovery. Further, applicable exceptions obviate these policy requirements 13

A. The need for timely notice is obviated by a requirement to show prejudice ..... 13

B. The need for proof of loss is obviated by the record ..... 13

C. Plaintiff is within the statute of limitations to pursue this claim ..... 14

VI. Conclusion ..... 15

## TABLE OF AUTHORITIES

**Cases** **Page**

*Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286 (Del. 1982) ........ 14

*Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*, 2021 WL 431475 (D. Del. Feb. 8, 2021) ........ 7

*Arcelik A.S v. E. I. du Pont De Nemours and Co.*, CV 15-961-LPS, 2018 WL 1401327 (D. Del. Mar. 20, 2018) ........ 6, 7

*Buhl Bldg., L.L.C. v. Commonwealth Land Title Ins. Co.*, 2019 WL 3916615 (Del. Super. Aug. 19, 2019) ........ 12

*Calamos Asset Mgt., Inc. v. Travelers Cas. and Sur. Co. of Am.*, CV 18-1510 (MN), 2020 WL 3470473 (D. Del. June 25, 2020) ........ 10

*Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457 (Del. 2017) ........ 9, 10

*Dac v. Booking Holdings Inc.*, No. CV 20-1191-WCB, 2022 WL 13946243 (D. Del. Oct. 24, 2022) ........ 5

*Falcon Steel Co., Inc. v. Maryland Cas. Co.*, 366 A.2d 512 (Del. Super. 1976) ........ 13

*Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784 (Del. Ch. 2020) ........ 11

*Graboff v. The Collern Firm*, 2010 WL 4456923 (E.D. Pa. Nov. 8, 2010) ........ 6

*In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404 (D. Del. 2007) ........ 6, 7

*ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727 (Del. 2020) ........ 14

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........ 3

*Lyon v. Paul Revere Life Ins. Co.*, 289 F. Supp. 2d 740 (W.D. Va. 2002) ........ 9

*Midlantic Nat. Bank v. Hansen*, 48 F.3d 693 (3d Cir. 1995) ........ 12

*Nathan Miller, Inc. v. N. Ins. Co. of New York*, 39 A.2d 23 (Del. Super. 1944) ........ 4

*Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, CV N18C-09-210, 2021 WL 347015 (Del. Super. Feb. 2, 2021) ........ 8, 9

*Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872 (D. Del. 1994) ........ 13

*Panhandle E. Pipe Line Co. v. Utilicorp United Inc.*, 928 F. Supp. 466 (D. Del. 1996) ........ 1

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ........ 1

*Pryor v. National Collegiate Athletic Ass'n*, C.A.3d, 2002, 288 F.3d 548 (3d Cir. 2002) ........ 5

*Soares v. Contl. Motors, Inc.*, CV K19C-12-028 NEP, 2021 WL 6015701 at *11, (Del. Super. Dec. 17, 2021), cert. denied, CV K19C-12-028 NEP, 2022 WL 153239 (Del. Super. Jan. 18, 2022), and appeal refused, 271 A.3d 1143 (Del. 2022 ....... 7

*State Farm Fire & Cas. Co. v. Walton*, 423 S.E. 2d 188 (Va. 1992) ....... 8, 9

*State Farm Insur. Co. v. Johnson*, 320 A.2d 345 (Del. 1974) ....... 13

*Voterlabs, Inc. v. Ethos Group Consulting Services*, LLC, 2020 WL 6131760 (D. Del. Oct. 19, 2020) ....... 7

*Wilhelm v. Nationwide Gen. Ins. Co.*, 2011 WL 4448061 at *4, (Del. Super. May 11, 2011), aff'd, 29 A.3d 246 (Del. 2011) ....... 13

*Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495 (D. Del. 2012) ....... 1, 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....... 1

Federal Rule of Civil Procedure 17(a)(1)(F) ....... 2

Fed. R. Civ. P. 17(a)(3) ....... 4

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (2d ed. 1990) ....... 1

Restatement (Second) of Conflict of Laws ....... *passim*

## I. Introduction

Plaintiff William Ramsey respectfully submits this brief in opposition to Defendant Standard Insurance Company's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Defendant's motion is fundamentally flawed as it ignores the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to "test the sufficiency of a complaint, not to resolve disputed facts or to decide the merits of the case."[1] The Third Circuit has held such motion practice to require a plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements.[2]

Plaintiff's Complaint meets that minimum threshold; but if the Court feels otherwise, then fairness requires that Plaintiff be given the opportunity to conduct discovery so that the Court has a proper factual basis upon which to analyze Defendant's arguments. Once facts are properly established, Plaintiff submits that his claims will survive a dispositive motion.

## II. Background and Procedural Facts

In 1989, Minnesota Mutual Life Insurance Company sold two business overhead expense insurance policies ("the Policies") to Friedman Billings Ramsey & Co ("Friedman Billings"). One of the policies was purchased on September 29, 1989, and is now worth $996,735.00, and the other policy was purchased on October 29, 1989, and is now worth $383,352.00. Plaintiff is

---

[1] *Panhandle E. Pipe Line Co. v. Utilicorp United Inc.*, 928 F. Supp. 466 (D. Del. 1996) (Quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 at 294 (2d ed. 1990))

[2] *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *See also*, *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 506 (D. Del. 2012).

listed as the insured on both policies. In 2002, Friedman Billings assigned the policies to BEM Capital Services. BEM changed its name to Ramsey Asset Management ("RAM") in 2004. Plaintiff and his wife were and are the sole owners of RAM.

On June 10, 2014, Plaintiff was diagnosed with renal cell carcinoma. In 2018, he was diagnosed with prostate cancer.

Plaintiff provided notice of an insurance claim to Defendant by October 17, 2018 which Defendant promptly acknowledged. On October 4, 2019, Defendant denied the claim. On May 20, 2020, Defendant upheld the denial of the claim after an internal appeal.

On September 20, 2022, Plaintiff filed the Complaint against Defendant seeking damages for breach of contract and bad faith.

## III. Plaintiff has standing to assert this claim against Defendant.

### A. Plaintiff has standing, individually or by virtue of owning RAM.

The record as currently constructed shows that Plaintiff has standing to assert a claim, both individually and by virtue of his ownership of RAM.

Defendant argues that Plaintiff lacks standing because he is the "insured" rather than the "owner" of the Policies. Federal Rule of Civil Procedure 17(a)(1)(F) states that "a party with whom or in whose name a contract has been made for another's benefit" may sue in that person's own name.[3] The contracts here were made in Mr. Ramsey's name for any disabilities that he may suffer.[4] Thus, he is a real party in interest to this action, whether or not he is the "insured" or the "owner".

[3] Fed. R. Civ. P. 17.

[4] Policy 1 at 11-12; Policy 2 at 742-43.

Further, contrary to Defendant's position, it is not clear that Ramsey is only the "insured". Ramsey appears to be both the owner and the insured of the Policies. The General Definitions section of the Policies states: "The insured is also the owner of this policy, unless otherwise provided for in this policy."[5] Mr. Ramsey is expressly named as the "Insured". Thus, he is also the owner of the Policies.[6]

Moreover, Plaintiff is the owner of the Policies by doing business as RAM. Defendant acknowledges that RAM is the owner of the Policies yet ignores that Ramsey and his wife are the sole owners of RAM.[7] Ramsey owns 60 percent of RAM and his wife Norma Ramsey owns the remaining 40 percent.

The "irreducible constitutional minimum" of standing comprises three elements: (1) an "injury in fact" suffered by the plaintiff which is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and conduct complained of, and (3) it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision.[8] Whether the Court identifies Plaintiff as an individual or by doing business as RAM, all three factors of standing are satisfied. Both Plaintiff and by consequence, his company, suffered an injury by not receiving benefits from the Policies. The monetary benefits are concrete and particularized, in the amount of $996,735.00 for one policy and $383,352.00 for the other policy. The causal connection is apparent: Defendant's refusal to pay benefits caused this injury

[5] Policy 1 at 13; Policy 2 at 744.

[6] Defendant may contend that the Ownership Endorsement of the Policies states otherwise; however, it is unclear whether the endorsements survived the assignment of the Policies from Minnesota Mutual Life Insurance to Standard Insurance Co. or if they were subsequently altered by other endorsements or changes.

[7] Standard was aware of the RAM ownership structure. Exhibit A – October 4, 2019 Standard letter at p. 5 ("Each year Mr. Ramsey is listed as 60% shareholder and Norma Ramsey is listed as 40% shareholder.")

[8] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

to Plaintiff and his company because they were not able to receive the benefits. The injury will be redressed through a favorable decision because benefits would be paid to either Plaintiff or the company of which he solely owns. Thus, it is a distinction without a difference whether it is RAM or Mr. Ramsey himself pursuing this claim for benefits.[9]

**B. Defendant has waived the right to assert lack of standing.**

After thorough and careful review of the administrative procedure leading to the denial of Plaintiff's insurance claim, and the subsequent appeal process, the record shows that Defendant never raised standing as a reason to deny benefits to Plaintiff. Further, Defendant's communication made no mention of standing, never making a delineation between Mr. Ramsey and RAM. At this stage, Standard should not be permitted to shift gears and make this argument.

Due to its prior conduct, Defendant has waived its right to assert lack of standing. In regard to waiver, the Delaware Superior Court has held:

> It is a reasonable doctrine that an insurer be required promptly to disclose its purpose if it intends to rest its defense on a technical ground, a default which neither alters the risk nor increases the liability; and if it asserts other grounds of defense, or chooses to treat with the insured, it must assume the risk of having its conduct construed as an abandonment of other less meritorious defenses.[10]

Here, Defendant's conduct demonstrates an abandonment of such a technical argument as standing. Defendant did not promptly disclose its purpose to rest its defense on the technical ground of standing. In a letter sent to Plaintiff on October 17, 2018, Defendant addresses Mr.

---

[9] If it is the Court's prerogative, Plaintiff can file a Motion for leave to amend the Complaint to add or substitute Ramsey Asset Management as a party to this case. *See* Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.")

[10] *Nathan Miller, Inc. v. N. Ins. Co. of New York*, 39 A.2d 23, 26 (Del. Super. 1944).

Ramsey and his desire to file a disability claim for his "individual disability policy."[11] In a letter sent to Plaintiff on June 3, 2019, Defendant addresses Mr. Ramsey again and inquires about why there is a delayed notice of claim.[12] In a June 21, 2019 letter, Standard asserts that it is reviewing Ramsey's medical condition, occupation, duties, and business financial affairs, yet there is no mention of standing.[13]

**C. If the Court has questions as to whether Plaintiff has standing, then Plaintiff should be afforded an opportunity to conduct discovery to establish standing.**

Defendant's standing argument is premised on the notion that the policy documents attached to its motion are authentic and comprise the complete Policies. Plaintiff is not in a position to admit or deny that premise. Plaintiff should be afforded an opportunity to conduct discovery to determine whether Defendant's two exhibits are the authentic and complete Policies. Defendant is correct that pursuant to a motion to dismiss, the court may consider an "undisputedly authentic document" that Defendant attaches as an exhibit if Plaintiff's claims are based on the document.[14] However, Plaintiff disputes whether these exhibits are the authentic and complete Policies. Defendant's exhibits purport to be the Policies bought by Friedman Billings, in addition to the applications and the assignment sheet from Friedman Billings to RAM.

The initial insurance forms were signed 34 years ago. It is likely that in the time that has passed, there have been supplementary documents integrated into the Policies. Discovery is

---

[11] Exhibit B – October 17, 2018 letter from Standard Insurance Co. and response from Ramsey's counsel on May 17, 2019.
[12] Exhibit C – June 3, 2019 letter from Standard Insurance Co.
[13] Exhibit D – June 21, 2019 letter from Standard Insurance Co. at p. 2.
[14] Defendant's Mot. At 7 (Quoting *Dac v. Booking Holdings Inc.*, No. CV 20-1191-WCB, 2022 WL 13946243, at *2 (D. Del. Oct. 24, 2022) (citation omitted)). *See also, Pryor v. National Collegiate Athletic Ass'n*, C.A.3d, 2002, 288 F.3d 548 (3d Cir. 2002).

warranted to determine if there have been any modifications, addendums, endorsements, assignments, or any other forms that would be integrated into the Policies.

The language of the Policies illustrates the conceivability that there are other documents currently outside the record which would be integrated into the Policies. The forms state that the word "policy" will also include riders, agreements, endorsements, or amendments attached to the policy.[15] It states that "[a]ny additional benefit agreement attached to this policy will become a part of this policy . . ."[16] Thus, discovery is imperative to determine the authentic and complete Policies. It is not only conceivable, but probable, that additional insurance information exists which would be an integrated part of the Policies and provide more detail about standing.

**IV. Discovery is necessary to properly determine choice of law. However, the current record (i.e. the allegations in the complaint) supports that Delaware law should govern this dispute.**

**A. Plaintiff should be permitted to conduct discovery so that the Court has a proper and complete factual predicate to determine choice of law.**

Delaware law should govern this dispute. However, such a determination by the Court is premature without discovery.

The U.S. District Court of Delaware has held that when a case remains in its early stages, it is inappropriate to undertake a choice of law analysis to determine a motion to dismiss.[17] In

[15] Defendant's Mot. At 3 (Quoting Policy 1 at 9; Policy 2 at 740).
[16] Policy 1 at 19; Policy 2 at 750.
[17] *Arcelik A.S v. E. I. du Pont De Nemours and Co.*, CV 15-961-LPS, 2018 WL 1401327 at *9, (D. Del. Mar. 20, 2018) (Quoting See *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 517 (D. Del. 2012) ("The Court will defer making a choice of law determination until there is development of a more complete factual record.") (Citing *Graboff v. The Collern Firm*, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010) ("Due to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings.")); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 411 (D. Del. 2007) ("This litigation is still in its infancy, and the Court concludes that these complex and

multiple breach of contract cases, the Court has held that choice of law disputes "are not ripe for decision" on a motion to dismiss.[18] When denying such a motion, the Court has noted factors such as a lack of discovery being taken[19] and when a "more complete context" is necessary.[20]

The Delaware Superior Court has held similarly, specifically when analyzing the "most significant relationship" test. To determine the most significant relationship, the Court held that it must possess the facts necessary to analyze each contact, some of which may be revealed during discovery, and of which cannot be considered in the context of a motion to dismiss.[21]

Here, a more complete context is necessary to determine relevant Restatement factors such as place of contracting, place where business took place, and any justifiable reliance that Ramsey may have had for the application of Delaware law.

**B. The facts in the record show evidence that Delaware law should govern this dispute.**

**i. There is a false-conflict between Virginia and Delaware, and thus, the forum state law should apply.**

The parties dispute whether Virginia or Delaware law shall apply.

Delaware relies on the Restatement (Second) of Conflict of Laws to resolve a choice of law dispute. There are three components of the analysis: (1) if an effective choice of law was made through contract; (2) if not, determining if there is an actual conflict between the laws of

sometimes dispositive choice of law questions should be made with the benefit of a more complete context for this litigation.").

[18] *Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*, 2021 WL 431475 at fn 16 (D. Del. Feb. 8, 2021).; *Voterlabs, Inc. v. Ethos Group Consulting Services*, LLC, 2020 WL 6131760 at fn 11, (D. Del. Oct. 19, 2020).

[19] *Arcelik* at *9.

[20] *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 411 (D. Del. 2007).

[21] *Soares v. Contl. Motors, Inc.*, CV K19C-12-028 NEP, 2021 WL 6015701 at *11, (Del. Super. Dec. 17, 2021), cert. denied, CV K19C-12-028 NEP, 2022 WL 153239 (Del. Super. Jan. 18, 2022), and appeal refused, 271 A.3d 1143 (Del. 2022).

the different states each party urges should apply; and (3) if there is a conflict, analyzing which state has the most significant relationship. Defendant asserts that Virginia has the most significant relationship but incorrectly analyzes component (2) as to whether an actual conflict exists. A proper analysis of the Defendant's purported "late notice" issue under Virginia law is necessary to determine whether there is an actual conflict between the state laws or instead, a "false conflict", which would ultimately lead to application of the law of Delaware, the forum state in this case.[22] Fortunately, there is a Delaware Superior Court case instructive on this issue.

In 2021, the Superior Court ruled on a similar dispute over choice of law between Virginia and Delaware in a "sprawling" insurance coverage case.[23] An insurer filed a summary judgment motion, asserting that coverage was barred due to untimely notice. The parties agreed that Delaware and Virginia courts would assess late notice under two factors: (1) justification for the delay and (2) prejudice to the insurer's ability to participate in the defense. The Court held that, despite certain nuances in the two state laws, ultimately there would be no difference in outcome; the insurers must demonstrate prejudice under either state's law. *Northrop Grumman* is instructive to this dispute. Whether Delaware or Virginia law is applied, the insurer must demonstrate that Ramsey's late notice caused prejudice in order to deny coverage. Thus, the outcome is the same, and conflict between the two states is a false conflict. A choice of law analysis is unnecessary, and the forum state, Delaware, should govern the dispute.

Meanwhile, the Virginia case law that Defendant relies upon is not on point. It is unsurprising that Defendant dedicates little explanation to *State Farm Fire & Cas. Co. v. Walton*, which allegedly holds that a Virginia insurer need not show prejudice to deny payment for an

---

[22] *Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, CV N18C-09-210, 2021 WL 347015 at *8, (Del. Super. Feb. 2, 2021).
[23] *Id.*

insured's non-compliance to show notice.[24] *Northrop Grumman* reviewed this case, and found a Virginia insurer is relieved of the need to show prejudice only when the facts show certain policy language and circumstances, none of which were applicable in the conflict issue in *Northrop Grumman*, nor are they applicable here. In *State Farm*, the court emphasized that the policy included the language "as soon as practicable" for an insured to provide notice; the Policies in this case have no such language. In *State Farm*, the insured seeking coverage gave minimal justification and no notice at all; here, Plaintiff gave both justification and notice, albeit delayed. Thus, while there are extreme circumstances where prejudice may not be required in Virginia, those circumstances are not present here, and have no bearing on this false-conflict analysis.

Defendant also raises *Lyon v. Paul Revere* to argue that the notice claim is enforceable.[25] However, prejudice is not raised as an argument in that case. The insured argues that she did in fact submit her claim on time, and she was assured by an agent that she was covered. These facts are of no guidance in this case.

**ii. Alternatively, Delaware has the most significant relationship to the case.**

Alternatively, if the Court finds a choice of law analysis is necessary and appropriate without developing a factual record, Delaware law should still govern.

Delaware courts rely on the Restatement (Second) of Conflict of Laws to determine which law applies, by analysis of three separate components.[26]

---

[24] Defendant's Mot. at 18 (Quoting *State Farm Fire & Cas. Co. v. Walton*, 423 S.E. 2d 188, 192 (Va. 1992)).

[25] Defendant's Mot. at 13 (Quoting *Lyon v. Paul Revere Life Ins. Co.*, 289 F. Supp. 2d 740, 743 (W.D. Va. 2002)).

[26] *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017).

First, the Court should determine if the Restatement applies a presumption for choice of law, as it does for certain types of contracts, such as life insurance or casualty insurance.[27] Business overhead insurance is not expressly mentioned under the Restatement, and thus, a presumption should not apply.[28] Defendant attempts to label business overhead expense insurance as a disability insurance contract, to be governed by the same choice of law rules as life insurance contracts.[29] Yet, this claim is belied by Defendant's own words, discussed *supra*.[30] This shifting of goal posts muddies how Defendant truly identifies the Policies. There is no presumption on point for business overhead expense insurance. Since there is no applicable presumption for business overhead expense insurance, the Court should move on to the next two criteria.

The Court should next analyze five factors pursuant to the Restatement (Second) §188 and six factors pursuant to Restatement (Second) §6 to determine which state has the most significant relationship.[31] The §6 factors are used to guide the overall analysis.[32]

---

[27] *Calamos Asset Mgt., Inc. v. Travelers Cas. and Sur. Co. of Am.*, CV 18-1510 (MN), 2020 WL 3470473 at *3, (D. Del. June 25, 2020).
[28] Restatement (Second) of Conflict of Laws §§189 – 195 (1971).
[29] Defendant's Mot. at fn 4.
[30] *See,* p. 9 *supra.*
[31] The §188 factors are: a) place of contracting, b) place of negotiation of the contract, c) place of performance, d) location of the subject matter of contract, and e) domicile, residence, nationality, place of incorporation and place of business of the parties.
The §6 factors are: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.
[32] *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 465 (Del. 2017).

A significant §6 factor in contract disputes, such as this one, is upholding the justified expectations of the parties. Such an analysis leads towards the application of Delaware law.[33] During the administrative process to determine coverage, Defendant argued that Plaintiff's knowledge of his cancer should be imputed to the company and thus, the company should have provided notice. Ramsey contended that the Delaware Limited Liability Company Act permitted a manager to withhold information of his illness under such circumstances.[34] The comment to Restatement (Second) for Conflict of Laws states that "it would be unfair and improper to hold a person liable under the local law of one state when he justifiably molded his conduct to conform to the requirements of another state."[35] Ramsey reasonably relied on the laws of the incorporation state of RAM, to make decisions. For the Court to hold him liable under a different state law when he "molded his conduct" to Delaware law would be unfair and improper. This administrative dispute also suggests that discovery could conceivably unveil a myriad of ways in which Plaintiff relied on Delaware law to run RAM, all of which could be relevant facts in this insurance dispute.

In assessing the §188 factors, factor (e) is significant to this dispute. Parties to the contract have included Minnesota Mutual Life Insurance, Standard Insurance, Ramsey Asset Management, and Friedman Billings Ramsey & Co.[36] All are incorporated in Delaware.

---

[33] *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 805 (Del. Ch. 2020). As to the other factors, pertaining to policy considerations, the analysis *supra* over a false-conflict shows that the relevant policies of Delaware and Virginia are somewhat unified.
[34] Exhibit E – April 7, 2020 Ramsey Appeal of Standard Insurance Co. Denial at p. 4.
[35] Restatement (Second) of Conflict of Laws § 6, cmt g (1971).
[36] Friedman Billings Ramsey & Co is the subsidiary of Friedman Billings Ramsey Group, Inc. While the parent company is based in Virginia, the broker-dealer subsidiary is incorporated in Delaware. The purchaser of this policy was the subsidiary, and thus, the relevant state of incorporation is Delaware. *See* Exhibit F – SEC Annual Statement List attachment of Subsidiaries of the Registrant.

Minnesota, Standard, and Ramsey Asset Management conduct business nationwide, including in Delaware.

Defendant raises that Ramsey Asset Management and Ramsey are both located in Virginia. Such factors are of less significance when the record is void of Virginia-based facts indicating that the business primarily did business in Virginia, or contracted in-state. [37] The record is also void of facts about where the Policies were negotiated or the place of performance. [38] If the Court places significant weight in these factors, then further discovery is necessary to furnish the record with facts about the specific details of these Policies.

It is also worth considering that RAM, the purported owner of the Policies, is currently an inactive company, and is not conducting any business. The Third Circuit has held that when assessing actual business activities of a company to determine its principal place of business, an "inactive" corporation -- one conducting no business activities -- has no principal place of business and is instead a citizen of its state of incorporation only.[39]

For the aforementioned reasons, it is more probable than not that Delaware law should apply to this dispute, particularly once a factual record has been developed.[40]

---

[37] This issue is ripe for discovery.

[38] Restatement (Second) of Conflict of Laws § 188 (1971), Comment on Subsection (2).

[39] *Midlantic Nat. Bank v. Hansen*, 48 F.3d 693 (3d Cir. 1995).

[40] This analysis makes clear that Delaware law should govern this breach of contract dispute. Thus, it should also govern the bad faith breach of insurance contract claim. *See, Buhl Bldg., L.L.C. v. Commonwealth Land Title Ins. Co.*, 2019 WL 3916615 at *4 (Del. Super. Aug. 19, 2019) (holding that claims for breach of insurance contract and bad faith breach of an insurance contract should be governed by the same law).

**V. Defendant's arguments over conditions precedent and statute of limitations are premature without necessary discovery. Further, applicable exceptions obviate these policy requirements.**

**A. The need for timely notice is obviated by a requirement to show prejudice.**

To escape liability under a notice clause, an insurer must demonstrate that (1) the insured did not provide notice as soon as practicable and (2) that it suffered prejudice as a result of the delay.[41] An insured's breach of the notice provision, without prejudice to the insurer, will not relieve the company of its liability under the contract.[42] At this motion stage, Defendant has the burden of proof to show such prejudice. Yet, its motion avoids any such argument. Moreover, the question of whether or not the delay in notification has caused prejudice to an insurer must be based on evidence and reasonable inferences and cannot be left to mere speculation.[43] Without such evidence, Plaintiff's claims must survive this motion.

**B. The need for proof of loss is obviated by the record.**

Defendant argues that a lack of a proof of loss is an independent basis to deny coverage. However, from a public policy perspective, it is illogical that an insured may receive coverage albeit giving late notice, but then would be denied because a proof of loss was not provided. Proof of loss is given after notice. The Policies make clear that when notice of a claim is received, then Defendant would furnish the forms to provide proof of loss within 15 days. It would go against common sense to assume that one would provide proof of loss but no notice. [44]

---

[41] *Wilhelm v. Nationwide Gen. Ins. Co.*, 2011 WL 4448061 at *4, (Del. Super. May 11, 2011), aff'd, 29 A.3d 246 (Del. 2011).

[42] *State Farm Insur. Co. v. Johnson,* 320 A.2d 345, 346 (Del. 1974).

[43] *Falcon Steel Co., Inc. v. Maryland Cas. Co.*, 366 A.2d 512, 518 (Del. Super. 1976).

[44] *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, fn 10 (D. Del. 1994) ("Common sense dictates that proof of loss cannot predate notice; that is, receipt of the proof of loss forms is dependent upon first giving notice. If plaintiff's notice was not unreasonable, and he immediately filed proof of loss documentation, then it is counterintuitive that his claim would be barred because of non-compliance with the policy's provisions.")

Plaintiff provided notice to Defendant on October 17, 2018. From that date, until June of 2019, Plaintiff was responsive in providing Defendant with proof of loss in the form of medical as well as financial information, including tax returns, schedules and profit statements.[45]

**C. Plaintiff is within the statute of limitations to pursue this claim.**

In Delaware, a party has a three-year statute of limitations to allege breach of contract.[46] Further, Delaware is an "occurrence rule" jurisdiction, meaning a cause of action accrues at the time of the wrongful act.[47] The wrongful act for a contract claim begins to run from the date of breach of contract.[48] Plaintiff filed the complaint on September 28, 2022, less than three years after his claim was formally denied by Defendant on October 4, 2019. Ultimately, the cause of action accrued when Defendant denied Plaintiff's appeal for coverage on May 20, 2020. It would defy logic for Plaintiff to have filed a claim prior to being denied coverage. A justiciable controversy does not arise until such a denial is given by an insurance company.[49]

Further, Delaware acknowledges the "harshness" of the occurrence rule when a plaintiff is ignorant of the facts.[50] Thus, the Court has applied a "time of discovery" exception to toll the time of accrual when the injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[51] At this stage, the record supports that Ramsey was unaware of the existence of the Policies and thus, his right to make a claim,

---

[45] The record is void of facts to determine when proof of loss was provided. Thus, discovery is proper to determine the record of when proof of loss was provided to Standard.
[46] *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1292 (Del. 1982).
[47] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732-33 (Del. 2020).
[48] *Id.*
[49] *Allstate Ins. Co* at 1292.
[50] *ISN Software Corp.* at 733.
[51] *Id.*

because he was suffering from symptoms of his illness, and that the billing department of RAM handled payment for the Policies, separate from him.

Defendant argues that the Policies state that cause must be brought six years after the time that written proof of loss is required. However, this argument, and Defendant's proof of loss argument both relate back to the issue of notice. If the Court finds that Defendant has not suffered prejudice in order to buttress a lack of notice, then its subsequent arguments about proof of loss and statute of limitations would be futile.[52]

## VI. Conclusion

For the reasons set forth herein, Plaintiff respectfully requests that Defendant's motion be denied.

MURPHY & LANDON

*/s/ Roger D. Landon*
ROGER D. LANDON, No. 2460
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8112
Attorney for Plaintiff

[52] Policy 1 at 19; Policy 2 at 750.